PARRILL ET AL. *v.* CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 2,984.  Filed January 10, 1900.]

CARRIERS.—*Shipment of Live Stock.—Loss in Transit.—Pleading.—Complaint.—Tort.*—In an action against a railroad company for loss of live stock in transit, the complaint alleged that plaintiff delivered to defendant certain live stock, to be transported by it as a common carrier; that the animals were loaded on a car furnished therefor by defendant, said car having open spaces at the sides and ends, and were bedded with hay, which was liable to be set on fire by sparks from the engine; that defendant, well knowing these conditions, placed the car near the engine, which had negligently been permitted to be and remain out of repair, by reason whereof, and by reason of its negligent and careless operation, sparks were

Parrill v. Cleveland, etc., R. Co.

emitted from the engine, the hay ignited and the live stock burned; wherefore plaintiff was damaged, etc. The defendant company filed answer in denial. *Held*, that the complaint stated a cause of action in tort, and that there could be no recovery where the evidence, on the trial, showed that the shipment was made under a written contract which, among other things, exempted the defendant from liability for any injury to the live stock caused by the burning of hay, straw, or other materials used for feed or bedding. *pp. 639-656.*

ELECTION OF REMEDIES.—*Contract.—Tort.*—Where there is no legal duty except that arising from a contract, there cannot be an election between an action on contract and one in tort.    *p. 648.*

CARRIERS.—*Contract.—Notice.*—Where a contract between a shipper of live stock and a common carrier provides for reasonable notice of claim, the giving of such notice being a condition precedent, it is a part of the plaintiff's cause of action to show performance of this precedent obligation on his part, or to show a waiver of performance.    *p. 653.*

SAME.—*Limitation of Liability.—Negligence.*—Where live stock is shipped under an express contract, which relieves the carrier from liability for loss occasioned by a specified cause, the carrier is not liable for loss occasioned by such cause, if the carrier was itself without fault or negligence.    *p. 652.*

From the Grant Superior Court.  *Affirmed.*

*Austin DeWolf*, for appellants.
*C. E. Cowgill*, for appellee.

BLACK, J.—The appellants, as partners, sued the appellee, alleging in the complaint that the appellee was a common carrier of goods from Fairmount, in Grant county, Indiana, to Anderson, in Madison county, Indiana; that on the 18th of October, 1897, the appellants delivered to the appellee certain hogs, sheep, and calves, the number and value of each class being stated, all of the value of $770; that these animals were to be carried by the appellee from said Fairmount by way of said Anderson to East Buffalo, New York; that they were loaded in a car furnished by the appellee, having open spaces in the sides and ends, and were bedded with hay, which was combustible and liable to be set on fire by sparks and cinders; that the appellee received said animals so loaded and bedded, well knowing that said hay was

combustible and liable to be ignited by sparks and cinders; that on said day the appellee undertook to convey said car of stock from said Fairmount, by way of said Anderson to said East Buffalo, by placing said car in a train of cars used for hauling freight, composed of twelve or fifteen box cars; that the spark-arrester on said engine used by the appellee in hauling said cars was out of repair, and the appellee carelessly and negligently operated said engine, "and by reason of said want of repair, and carelessly and negligently operating the same, it emitted sparks when employed in hauling said cars;" that the appellee, well knowing the premises, placed, kept, and hauled the car containing said animals in a dangerous and hazardous place near said engine; and that by and through want of repair of said spark-arrester, and the careless and negligent handling of said engine while hauling said car, sparks and cinders were emitted from said engine, and entered said open spaces in said car, and ignited said hay and set the car on fire, and said animals were burned and damaged and killed, to the damage of the appellants in the sum of, etc.; wherefore, etc. There was an answer in denial, and the cause was tried by jury.

It appeared on the trial that the shipment was made under a written shipping contract, signed by both parties, which was introduced in evidence. It contained many provisions qualifying the liability of the carrier, among them a stipulation that the carrier should not be liable for any injury sustained by the live stock occasioned by certain specified causes, among them being the burning of hay or straw or other material used for feeding or bedding, or fire from any cause whatever. There was also a provision that no claim for damages which might accrue to the shipper under this contract should be allowed or paid by the carrier, or sued for in any court by the shipper, unless a claim for such loss or damages should be made in writing, verified by the affidavit of the shipper or his agent and delivered to the freight claim agent of the carrier at his office in Cincinnati,

Ohio, within five days from the time of the removal of the stock from the car. There was a provision, also, that the shipper at his own risk and expense should load and take care of and feed and water the stock whilst being transported, and that the carrier should not be under any liability or duty with reference thereto except in actual transportation thereof; and provision was made for the carriage of those in charge of the stock without extra charge. There was an acknowledgment of the shippers that they had the option of shipping the stock at a high rate of freight according to the official tariffs, classifications, and rules of the carrier, and thereby receiving the security of the liability of the transportation company as a common carrier of said live stock, but that they had voluntarily decided to ship the stock under this contract at the reduced rate therein stipulated.

The court below ruled that, the action not having been brought upon the written contract, it could not be maintained, and directed the jury to return a verdict for the appellee, which accordingly was done. A motion for a new trial assigning the single ground that the court erred in thus instructing the jury was overruled, and thé matter is brought before this court as a reserved question of law upon a bill of exceptions under §642 Burns 1894, §630 Horner 1897.

The complaint is characterized by the appellants as a complaint in tort. We think it can not properly be regarded as a complaint on contract express or implied. There is no averment of a promise and, in terms, a consideration therefor.

In *Smith* v. *Seward*, 3 Pa. St. 342, it was said: "There has been a good deal of wavering on the subject, not only as to the proper remedy, but as to the distinctive feature of the declaration. In regard to the latter, *Corbett* v. *Packington*, 6 Barn. & Cres. 268, has put the law of the subject on satisfactory ground, by making the presence or absence of an averment, not of promise only, but of consideration

also, the criterion;   *   *   *   and when a consideration is not laid, the word *agreed*, or *undertook*, or even the more formal word promised, must be treated as no more than inducement to the duty imposed by the common law." See Hutchinson Carriers §744; *Ansell* v. *Waterhouse*, 2 Chit. 1; *Bretherton* v. *Wood*, 3 B. & B. 54; *Tattan* v. *Great Western R. Co.*, 2 E. & E. 844, 105 Eng. C. L. 844; *Baylis* v. *Lintott*, L. R. 8, C. P. 345.

In Elliott on Railroads, §1693, it is said: "As a general rule, where there is a breach both of contract and of duty imposed by law, as in the case of loss or injury by a common carrier, the plaintiff may elect to sue either in contract or in tort. But it has been held in Indiana that where the plaintiff elects to sue in tort, or for a breach of the duty imposed by law, he can not recover if the evidence shows a special contract. This may be correct where the plaintiff sues on an implied contract, but where he sues in tort for negligence, it seems to us that it can not be good law, for it would do away with the doctrine of election of remedies."

If the complaint could be treated as based upon contract, it is well settled under our practice in this State that it could not be regarded as founded upon a written contract, and that in such case, when it appeared upon the trial that the contract was a written one, the action could not be further maintained.

In *Indianapolis, etc., R. Co.* v. *Remmy*, 13 Ind. 518, it was decided, that, under our code, where an action against a common carrier, as such, proceeds as upon contract, if the contract was in writing, the written contract, or a copy thereof, must be filed with the complaint, and that where in such case the contract is not by the complaint shown to be in writing. and exhibited, and it appears in evidence on the trial to be a written contract, the plaintiff can not recover.

In *Jeffersonville, etc., R. Co.* v. *Worland*, 50 Ind. 339, the complaint alleged a special contract to transport certain live stock, from, etc. to, etc., at a specified price; that the

plaintiff shipped the live stock described on the evening of a certain day, and the defendant agreed to deliver it at its destination the next day, at 9 o'clock, a. m., and the complaint showed negligent delay and consequent loss, etc. It was found on the trial that there was no special contract, and it was held by the Supreme Court that there could be no recovery on an implied contract to carry in a reasonable time, or for breach of the legal duty of the defendant as a common carrier; that there was a failure of proof.

In *Lake Shore, etc., R. Co.* v. *Bennett*, 89 Ind. 457, it was said by the court (page 470) that, in both of the two paragraphs of the complaint, the plaintiff sued the defendant as a common carrier for hire for an alleged breach of its common law duty as such carrier in the transportation of his cattle. On page 469, speaking of the first paragraph of the complaint, it was said that in it the plaintiff "counted exclusively upon an implied contract or agreement of the appellant, as a common carrier, and sought to recover damages for an alleged breach of its common law duty as such carrier in the transportation of his cattle. No reference whatever is made in the first paragraph to any special or written contract between the parties for the carriage and delivery of appellee's cattle. When, therefore, the court found, as it did, that appellee's cattle were delivered to and received by the appellant under a special contract, which was at the time duly executed by the parties, it would seem that such finding would be an end of the case, as stated in the first paragraph of the complaint, and that no recovery could be had thereon. Especially so, when it was agreed in such special contract that the appellant 'does not and will not assume or consent, as a common carrier, to transport live stock.' In the face of this stipulation or limitation, agreed to expressly by the appellee, he can not, as it seems to us, maintain his action against the appellant, as a common carrier for any alleged breach of its common law duty as such carrier in the transportation of his cattle." On page

471, after holding that the plaintiff by a reference in the complaint, which reference is quoted in the opinion of the court, did not in fact declare upon such contract, it was said: "It was not competent for the appellee, as it seems to us, to ignore the written contract assented to and accepted by him for the transportation of his cattle, and to attempt, in direct contravention of the provisions of such contract, to hold the appellant liable in damages as a common carrier, for an alleged breach of its common law duty as such carrier, in the transportation of his cattle." It will be observed upon a perusal of the original opinion in that case that the court held, in effect, that the special findings of the trial court showed that there was no negligence on the part of the carrier, and on petition for a rehearing it was said: "There can be no difference, practically, whether the appellee bases his claim for recovery upon the appellant's liability as a common carrier or upon the express contract set out in the special findings of the court, as, in our opinion, such special findings of fact show that the appellant was not liable upon either ground. The appellee's loss resulted from causes over which the appellant had no control, and against which no care or prudence could have provided; and the special findings show that the appellee's property had all the care and attention that, under the circumstances, an ordinarily careful man would have bestowed upon his own property."

In *Hall* v. *Pennsylvania Co.*, 90 Ind. 459, it was said that the complaint alleged, in substance, "that the appellee, on the 16th day of July, 1877, and long prior thereto, was a common carrier of goods, to carry for hire the goods of all persons, upon request, from Philadelphia, Pennsylvania, to Kendallville, Indiana; that on said day the appellant's testate [George Glatte], delivered to the appellee, as such carrier, in good order, fifteen barrels of sugar, the goods of such decedent, to be carried by the appellee safely from Philadelphia to Kendallville, then and there to be delivered

. to the said George Glatte, then in life; that appellee then and there received said goods to be safely carried and delivered as aforesaid, for a reasonable. reward to be paid therefor by the said Glatte; that appellee failed and neglected safely to carry and deliver said goods to said Glatte, in his lifetime, nor since his death had appellee delivered the same to appellant, but that the same had been wholly lost, for want of due care and preservation by the appellee, to the damage of the appellant in the sum of," etc. It appeared in evidence that there was a written contract, which provided that the carrier should not be liable for loss by fire. It was said by the court that the appellant in the complaint "counted exclusively upon an implied contract or agreement of the appellee, as a common carrier, and sought to recover damages for an alleged breach of its common law duty as such carrier." The evidence showed that the goods were lost by fire, and clearly indicated that they were so lost without any negligence on the part of the carrier. The decision, however, was not based upon the absence of negligence, but it was said: "When the evidence showed, as it did, that the decedent's sugar was delivered to and received by the appellee for transportation and delivery, under the terms of a special contract, there could be no recovery by the appellant in this action, because the special contract was not sued on, and because of the fatal variance between the case made by the allegations of the complaint and the case made by the evidence."

The case last mentioned is recognized in *Indianapolis, etc., R. Co.* v. *Forsythe*, 4 Ind. App. 326, 328, as a suit on an implied contract.

In *Bartlett* v. *Pittsburgh, etc., R. Co.*, 94 Ind. 281, an action for damages occasioned by delay in the shipment of live stock, it was said of the first paragraph of the complaint; that it was alleged that on, etc., the plaintiff delivered to the defendant, a common carrier, 265 head of hogs, at, etc., to be transported and delivered to the plaintiff at, etc.,

within a reasonable time; that defendant failed to do this, but carried the hogs to an intermediate station named, an l there delayed and kept them in pens, in unhealthy places, for twelve days, whereby fifty-eight died and the remainder shrank in weight, etc., to the plaintiff's damage, etc.

It was said by the court that this first paragraph of complaint was based on the defendant's liability as a common carrier, and not upon a written contract; but that it was shown in evidence, and specially found by the jury, that the shipment was made under written contracts; and thereupon it was said: "It is settled by the decisions of this court, that where suit is brought against a common carrier to recover damages for the non-delivery of goods received by it for carriage, and the complaint merely alleges a breach of the common law duty of such carrier, if the evidence shows that the goods were received for carriage under a special written contract, which was not declared upon, the variance is fatal and the plaintiff cannot recover;" citing *Indianapolis, etc., R. Co.* v. *Remmy*, 13 Ind. 518; *Jeffersonville, etc., R. Co.* v. *Worland*, 50 Ind. 339; *Lake Shore, etc., R. Co.* v. *Bennett*, 89 Ind. 457, and *Hall* v. *Pennsylvania Co.*, 90 Ind. 459.

In *Snow* v. *Indiana, etc., R. Co.*, 109 Ind. 422, there were two paragraphs of complaint, and it was said by the court that both of them counted "upon the violation of an alleged agreement to ship from," etc., to etc., by a certain route named. It was said that the bill of lading must be taken as the final repository and the sole evidence of the agreement between the parties, and that *Indianapolis, etc., R. Co.* v. *Remmy, supra; Hall* v. *Pennsylvania Co., supra*, and *Bartlett* v. *Pittsburgh, etc., R. Co., supra*, maintain the rule that where suit is brought against a common carrier for a breach of common law duty, in failing to deliver the goods, if the evidence shows that the goods were received under a special written contract which was not declared on, the variance is fatal, and there can be no

recovery; and that, since it appeared that the goods were received for shipment under a written contract set up in the first paragraph of complaint, "there could, in no event, have been a recovery under the second paragraph, which simply counted upon a breach of the carrier's common law duty."

In *Indianapolis, etc., R. Co.* v. *Forsythe*, 4 Ind. App. 326, it was said that the complaint declared upon a parol or implied agreement for the transportation of certain goods, for a valuable consideration, and charged that they were burned through negligence. On the trial, the evidence showed a bill of lading containing a stipulation against the carrier's liability for loss by fire. It was held that there was a fatal variance. In the course of the opinion it was said that if the evidence showed a case of negligence, the bill of lading would be no defense, "nor do we think in such a case it would necessarily constitute the foundation of the action." But it was further said, that if the liability were one from which the carrier might relieve himself by contract, and such contract was in fact entered into, "there can be no doubt under the Indiana authorities that the action must be upon the contract, and not upon the common law liability." The court spoke of the existence of a different rule elsewhere, and concluded that under the decisions of our Supreme Court the right to elect between an action in tort and an action on the contract does not in this State exist where there is a special contract. The decisions of the Supreme Court thus referred to have been noticed by us above.

In *Baltimore, etc., R. Co.* v. *Ragsdale*, 14 Ind. App. 406, the complaint was treated as being "upon the common law liability." It was said: "It seems to be settled by the decisions in this State, that if the shipper declares upon an implied contract, or the common law liability, and it appears that the shipment was made in pursuance of a special contract or bill of lading, he must fail." In that case the first

paragraph of complaint, as shown in the opinion of the court, was in tort, under the recognized rules of pleading, and the second paragraph perhaps might be properly classed as on contract. Again, in *Stewart* v. *Cleveland, etc., R. Co.*, 21 Ind. App. 218, it was said to be the established rule in this State that where the action is upon an implied contract or for an alleged breach of the carrier's common law duty, and it is found on the trial that the goods were shipped under a special written contract limiting the common law liability, the plaintiff can not recover, citing cases herein above noticed.

We have taken space to show the decisions to which the rule in question concerning pleading is referred. In some of them the action was plainly upon contract; in others, the views of the courts as to the character of the action are not clearly shown; but the rule as expressed embraces actions in tort, and some of the cases were in tort. Where there is no legal duty except that arising from a contract, there can not be an election between an action on contract and one in tort; for there is no tort. In such case there can be no action except upon the contract. All actions against common carriers for breach of their common law duty as such,—their supposed public duty implied by law,—wherein they were held to their common law liability, originally were in tort, being founded upon the custom; that is, upon the common law. Later they were held to the same responsi-bility in actions upon the contract, wherein, though negligence were alleged, the carrier could not exonerate himself by disproving negligence, but was held to answer for all loss, except such as happened through the act of God or the public enemy; and the carrier might be sued in assumpsit for breach of contract, or in tort for breach of duty. The existence of a contract does not devest the common carrier for hire of his responsibility as such in respect to any excepted cause of loss where, in fact, the loss was due to his negligence, the exception being understood to be conditioned upon due care on the part of the carrier.

.In Chit. Pl. 134, it is said that although assumpsit is the usual remedy for neglect or breach of duty against carriers, whose liability is founded on the common law as well as on contract, yet "they are also liable in case for an injury resulting from their neglect or breach of duty in the course of their employ.   *   *   *   And it seems that although there be an express contract, still if a *common law duty* result from the facts, the party may be sued in tort for any neglect or misfeasance in the execution of the contract." As to the evidence, in either case, whether in tort or on contract, it is necessary to prove a contract implied or expressed.   Angell on Carriers, §462.

In *Emigh* v. *Pittsburgh, etc., R. Co.*, 4 Biss. 114, an action for wrongfully putting the plaintiff off a train, where it was claimed that the second paragraph of the complaint was in assumpsit, it was said, per McDonald, J.:   "As I understand it, the subjects proper for an action on the case are of two distinct classes.   First, where there is a tort committed, without force, on the person, character, or property of the plaintiff, entirely unconnected with any contract. Secondly, when there is a contract, either express or implied, from which a common law duty results, an action on the case lies for a breach of that duty; in which case the contract is laid as mere inducement, and the tort arising from the breach of duty as the *gravamen* of the action.   *   *   * So this form of action lies against agents, wharfingers, and common carriers, whether they be acting under a contract expressed or implied.   Indeed, nothing is more common in the common law courts than the action on the case against common carriers of goods, though their engagements are always on contract express or implied."

In 1 Chit. Pl. 384, it is said:   "In an action on the case, founded on an express or implied contract, as against an attorney, agent, carrier,   *   *   *   for negligence, etc., the declaration must correctly state the contract, or the particular duty or consideration from which the liability results,

and on which it is founded; and a variance in the description of a contract, though in an action *ex delicto*, may be as fatal as in an action in form *ex contractu*." Again on p. 386, it is said to be a rule that, if a necessary inducement to the plaintiff's right, etc., even in actions for torts, relate to and describe and be founded on a matter of contract, it is necessary to be strictly correct in stating such contract, it being matter of description.

In 2 Greenleaf Ev. §209, it is said that in any form of action the contract, must be proved as laid in the declaration. Also in §210, it is said that if the defendant is proved to be a common carrier, where there is an express contract, that alone must be relied on, and no other can be implied.

In *Ansell* v. *Waterhouse*, 2 Chit. 1, it was said by Abbott, J.: "Plaintiff has his election, and may declare in either form, either for tort, or in assumpsit on the expressed or implied contract." That case was an action in tort. It was said that the terms of the contract, unless changing the duty of a common carrier, were in that case quite immaterial.

In *Legge* v. *Tucker*, 1 H. & N. 500, it was said: "Where the foundation of an action is a contract, in whatever way the declaration is framed, it is an action of assumpsit; but where there is a duty ultra the contract, the plaintiff may declare in case."

*Walpole* v. *Bridges*, 5 Blackf. 222, was in tort, on the case against a common carrier, founded on his general liability, for the non-delivery of goods. It was held that a bill of lading which did not restrict the general liability of the carrier was admissible in evidence for the plaintiff.

In *Ireland* v. *Johnson*, 1 Bing. N. C. 162, it was said that in an action of tort arising out of a contract the statement of the contract is often as material as in an action on the contract itself.

In *Lopes* v. *DeTastet*, 1 B. & B. 538, it was said by Dallas, C. J., that in actions of tort, wherever a party seeks to recover for a breach of duty growing out of an employ-

ment, he must state the employment truly, and that in every case he is bound to prove the employment as he has alleged it. And by Park, J., it was said to be the rule that whether a party proceed in form *ex delicto* or in form *ex contractu*, yet the contract must be stated to raise the duty or employment. And by Burroughs, J., it was said that whether the action was in the shape of tort or assumpsit, the employment must be truly stated and proved.

In *Weall* v. *King*, 12 East. 452, an action on the case, it was said to be a rule of law that the proof of the contract must correspond with the description of it in all material respects.

In *Burnett* v. *Lynch*, 5 Barn. & Cres. 589, it was said by Bailey, J., on p. 605: "It is unnecessary to go through the cases in which it has been decided, that although there be an express contract, a party is not bound to resort to that contract as the gist of the action, but he may declare on the tort, and say that the party has neglected to perform his duty." And *Dickon* v. *Clifton*, 2 Wils. 319, was cited as a case where the plaintiff described the contract in specific terms, and brought case against the defendant for negligence in the performance of his duty.

In *Latham* v. *Rutley*, 3 D. & R. 211, the action being in assumpsit against common carriers, wherein the plaintiff merely declared against the defendants upon their common law liability, it was held that if there was a special agreement to deliver as directed, "fire and robbery excepted", and it was found by the jury that the loss was not occasioned by fire or robbery, but by the negligence of the defendants, the contract should have been declared upon specially, setting out the exceptions to the liability of the defendants, and that there was a fatal variance.

A common carrier, it has been said, does not by his special contract qualifying his common law liability, as such, become a private carrier as to the particular goods to which the contract relates, and where, in such a special contract, it

is agreed that the carrier shall not be liable for losses occasioned by specified causes, as where it is so agreed as to losses by fire, proof of loss through negligence of the carrier will deprive him of the benefit of this exemption in the contract, and he will be held responsible to the same extent as if he had been a carrier not protected by a contract qualifying his liability. Hutchinson Carriers, §§42, 44, 119, 280.

In *Terre Haute, etc., R. Co.* v. *Sherwood*, 132 Ind. 129, 134, 17 L. R. A. 339, it is said: "The special contract, although it may release the carrier from some obligations and duties, does not take from him his character as a common carrier." See *Ohio, etc., R. Co.* v. *Selby*, 47 Ind. 471, 17 Am. Rep. 719.

Where live stock is shipped under an express contract which relieves the carrier from liability for loss occasioned by a specified cause, the carrier is not liable for loss occasioned by such cause if the carrier was itself without fault or negligence. *Bartlett* v. *Pittsburgh, etc., R. Co.*, 94 Ind. 281. Where the injury for which the plaintiff sues a common carrier is one arising from a cause as to which a special contract between the parties provides there shall be no liability of the carrier, as where the injury has been caused by fire, and by special contract it has been agreed that the carrier shall not be liable for loss from fire, as in the case before us, then the burden is upon the plaintiff to show the carrier's negligence. *Insurance Co.* v. *Lake Erie, etc., R. Co.*, 152 Ind. 333; *Terre Haute, etc., R. Co.* v. *Sherwood*, 132 Ind. 129; *Indianapolis, etc., R. Co.* v. *Forsythe*, 4 Ind. App. 326; Hutchinson Carriers, §767.

If the carrier, however, were liable as for a breach of duty under the custom, he would be liable for all loss except such as was occasioned through the act of God or the public enemy, and the plaintiff, in such case, though he might allege negligence, would not be required to prove it. Neither would he be required to allege or prove want of contributory negligence on his part. *Evansville, etc., R. Co.*

v. *Keith*, 8 Ind. App. 57.  In the case of the shipment of live stock, the common carrier is, without special contract, exempt from liability for loss through the act of God or the public enemy, or through proper vice or inherent infirmity. Where, as here, there is a special contract for care of the stock on the part of the shipper during transportation, it has been held to be necessary for the plaintiff to take the burden of proving that the loss was not attributable to failure or negligence in the performance of his part of the contract.  *Terre Haute, etc., R. Co.* v. *Sherwood*, 132 Ind. 129.  So where, as here, there is a special contract providing a necessity for reasonable notice of claim, the giving of such notice or the presentation of such claim being a condition precedent, it is a part of the plaintiff's cause of action to show performance of this precedent obligation on his part, or to show a waiver of performance or of strict formality.  *Louisville, etc., R. Co.* v. *Steele*, 6 Ind. App. 183; *Louisville, etc., R. Co.* v. *Widman*, 10 Ind. App. 92; *Case* v. *Cleveland, etc., R. Co.*, 11 Ind. App. 517; *Baltimore, etc., R. Co.* v. *Ragsdale*, 14 Ind. App. 406; *Cleveland, etc., R. Co.* v. *Heath*, 22 Ind. App. 47.  If we could say that as to loss from an excepted cause, though occasioned by negligence, the carrier was not a common carrier, but was a private carrier, and that no common law duty had been violated, then it would seem to result that the action therefor must be in contract, and not in tort.  We must be able to say that a common law duty has been violated to authorize an action in tort.  But we apprehend that the fact that the loss has happened from an excepted cause, whether excepted by the common law or by contract, does not relieve the common carrier from liability as such, if in truth the loss was occasioned by his negligence, and in such case he has violated a duty imposed by the common law upon him as a common carrier.

Whatever may be the proper rule as to the burden of proof, a common carrier will not be relieved from liability

for loss by the act of God or the public enemy, if his negligence concurred with such cause in producing the injury or contributed to the loss. *Michaels* v. *New York, etc., R. Co.*, 30 N. Y. 564, 571. If he is actually guilty of negligence, he will be held liable for a loss which otherwise might be deemed a loss by an inevitable casualty. Story Bail., §492; Hutchinson Carriers, §§186, 208. In Hutchinson Carriers, §280, it is said: "Negligence and misfeasance universally deprive the carrier of all advantage which he might have otherwise derived, either from defenses based upon inevitable accident, the act of God, or contract, unless such contract cover his negligence; and even then it will not avail him unless, as we have seen by the law of the particular country, such exemption is considered just and reasonable."

It would be against public policy to permit common carriers, which are *quasi* public institutions and practically enjoy a monopoly (there being in truth a want of equality in the positions of the carrier and the shipper, respectively), to relieve themselves by contract entirely from their public duty. Therefore, if the contract except absolutely from the liability of the carrier losses from particular causes, still there will be a duty of the carrier not to permit such loss through the negligence of the carrier or its servants. If it be strictly true to say, as is sometimes said, that where there is a contract the general duty of the carrier in respect to which a tort may be committed is founded on contract, it must also be allowed that the law adds to the contract of a common carrier an implied warranty of exceptional stringency not applicable to the contracts of private carriers. The duty to exercise care and diligence is, in such case, in antagonism to the express terms of the contract; and whether it be said to be implied as a part of the contract, or that the contract should be construed as if the duty were expressly recognized therein, or it be said to be a duty *ultra* the contract, it is a duty imposed by law upon the common carrier as such,—it is a duty arising, by force of law, out

of the unequal relation into which the parties have entered
by contract. It is upon the theory that it is a private con-
tract in which the public have no interest that the doctrine
of the New York courts, repudiated by the Supreme Court
of· the United States, is based. *Parsons* v. *Monteath*, 13
Barb.· 353; *Smith* v. *New York, etc., R. Co.*, 24 N. Y. 222;
*New York, etc., R. Co.* v. *Lockwood*, 17 Wall. (U. S.) 357.

In the nature of things, under our system of law, the sub-
stantial distinction between actions sounding in tort and
actions sounding in contract can not be abolished, and
there has been no pretense that this distinction is abro-
gated or changed by our code. Where an action is spoken
of as one for a breach of the common law duty of a com-
mon carrier, it is usually undertsood that an action of
tort is meant. Possibly there may be in some of our
cases expressions not required by the particular cases in
hand. Under our code, it is only where an action is founded
upon a written contract that it must be filed as an exhibit
or set forth verbatim. A contract may be stated in a plead-
ing, and though it be a material matter in the pleading, yet
if the action is not on contract, but is in tort, there is no
requirement that it be stated to be in writing, if this be true,
or that, being in writing, it be set out verbatim. Yet it is
the spirit of our system of code pleading which should be
encouraged and maintained by the courts, that the pleadings
should state the facts fully and plainly without fictitious
inducements and as the facts constituting the cause of
action will be relied upon or shown on the trial. When the
cases in this State are considered with reference to the mat-
ters actually decided, possibly they are not necessarily incon-
sistent with the proposition that, in such a case as the one
now at bar, there may be an election between an action on
the contract, in which case it must be filed as an exhibit or
set forth in its own terms, and an action in tort, in which
case the contract should be so laid as matter of inducement
that the pleading will truly show the respective rights and

obligations of the parties; the plaintiff showing the breach of duty of the defendant, and a loss or injury as to which the contract would not afford protection to the carrier. The filing of the written contract with the complaint could not aid the pleading as an action in tort, and this characteristic of our code might possibly be made to serve in part as a mode of indicating the election of the plaintiff between tort and contract. The manner in which the relation between the parties originated, out of which arose the duty, should be shown in pleading, and the averments showing the relation can not be regarded as immaterial, but the facts should be proved as laid.

If there was in truth no contract except such as is designated as an implied contract growing out of or inferred from acts of parties, then there may be an action in tort without showing an express contract. But where there is in fact a special contract, whether oral or written, an action in tort is for a breach of duty in the course of an employment under an undertaking, and the contract by which the relation was entered into should be truly stated, and proof of a different express contract, or of an implied contract, should not be permitted to sustain such a cause of action. Whether or not such a method of pleading in tort, where the evidence will show a special contract, is permissible, it is manifest that the present action was not well maintained. In any view consistent with the decisions in this State, the proof of the special contract, in writing, under the issue formed by the complaint and answer, was enough to defeat the action.

Judgment affirmed.