## ILLINOIS CENTRAL RAILROAD COMPANY v. MATTINGLY
### ET AL.

[No. 9,598. Filed May 16, 1918. Rehearing denied December 11, 1918. Petition to transfer dismissed January 9, 1919.]

1. CARRIERS.—*Delay in Shipment of Live Stock.—Pleading.*—In an action against a carrier for delay in the shipment of hogs, a complaint alleging, in addition to general averments of unreasonable delay, that it took more than thirteen hours to make the delivery when four hours was a reasonable time therefor, that, by reason of such delay and the negligent handling in transporting and delivering the hogs, they suffered unusual and excessive shrinkage to the amount of 700 pounds, and that six hogs of the value of $150 died and were wholly lost to the plaintiff, and alleging also the market value of the hogs at the place of delivery, sufficiently stated a common-law action for damages as against objections that it failed to show negligence or a violation of duty by the defendant, or that the defendant had notice or knowledge that the hogs were to be delivered at a particular time, and that it sought to recover special damages without alleging facts authorizing such damages. p. 170.

2. CARRIERS.—*Shipment of Live Stock.—Limiting Liability.—Consideration.*—Where the shipper has a *bona fide* opportunity of making choice of rates and of shipping under the carrier's common-law liability, a stipulated difference in the shipping rate affords a sufficient consideration to support a contract for limited liability of a common carrier. p. 173.

3. CARRIERS.—*Shipment of Live Stock.—Limiting Liability.—Consideration.*—The mere recital in the contract of shipment of a difference of rates with corresponding differences in liability does not preclude the shipper from showing that he was not, as a matter of fact, afforded an opportunity of making a choice of rates, and of shipping under the unrestricted common-law liability of the carrier. p. 173.

4. CARRIERS.—*Shipment of Live Stock.—Limiting Liability.—Consideration.*—A contract limiting the common-law liability of the carrier must be supported by a valuable consideration apart from the mere acceptance of the property for shipment. p. 173.

5. CARRIERS.—*Shipment of Live Stock.—Limiting Liability.—Contract.—Validity.*—In a shipper's action against a carrier for damages for delay in a shipment of hogs, in which the defense relied

on a special contract limiting liability, a reply stating facts show-ing that the plaintiffs were compelled to ship under the alleged special contract or not at all, which contract was a regular printed form of the carrier, and that the carrier's agent was authorized to ship live stock only under the form and terms of such contract, was sufficient as against demurrer, the contract executed under such circumstances being invalid.   p. 173.

6.  CARRIERS.—*Shipment of Live Stock.—Limiting Liability.—In-structions.*—Where controverted questions in a shipper's action related mainly to a special contract limiting liability for dam-ages to a shipment of hogs, instructions fairly submitting the questions whether the plaintiffs were afforded an opportunity of shipping at a higher rate and of holding the carrier to an unrestricted liability at common law, and whether the alleged contract was voluntarily entered into by the plaintiffs when they could have paid a higher rate and shipped without the restric-tions of such contract, and correctly stating the legal rights of the parties under such a contract voluntarily executed and also their rights in the absence of such contract, were sufficient. p. 174.

From Gibson Circuit Court; *Simon L. Vandeveer,* Judge.

Action by Benjamin J. Mattingly and another against the Illinois Central Railroad Company. From a judgment for the plaintiffs, the defendant appeals. *Affirmed.*

*Woodfin D. Robinson* and *William E. Stilwell,* for appellant.

*Claud A. Smith* and *T. Morton McDonald,* for ap-pellees.

FELT, J.—Appellees brought this action against ap-pellant to recover damages for alleged negligent delay in delivering live stock shipped by appellees over appellant's road.  The complaint in one paragraph was answered by a general denial and a second para-graph of special answer.  To the second paragraph of answer, appellees filed reply of general denial and

also a second and a third paragraph of special reply. The case was tried by a jury and a verdict returned in appellees' favor for $160. Appellant's motion for a new trial was overruled and an exception duly reserved. Judgment was rendered on the verdict.

Appellant has assigned as error: (1) The overruling of its demurrer to the complaint; (2) the overruling of its demurrer to the third paragraph of appellees' reply to appellant's second paragraph of answer; and (3) overruling the motion for a new trial.

Omitting formal and unquestioned averments, the complaint alleges that appellant is a common carrier of freight and passengers over its road which extends through Waverly, Union county, Kentucky, to Evansville, Indiana, and beyond that city; that appellees are partners and on May 2, 1913, delivered to appellant at the town of Waverly, seventy-eight hogs weighing 14,395 pounds and 83 hogs weighing 19,375 pounds, all alive, and in good condition; that appellant accepted the same for shipment to Evansville, Indiana, and the same were loaded in certain designated cars of appellant and duly consigned to Garland Thompson and Company at Evansville to be sold for the use and benefit of plaintiffs; that the reasonable time required for the shipment of said hogs from Waverly to Evansville over appellant's road was four hours; that in the exercise of ordinary care and diligence defendant should have delivered said hogs at the destination aforesaid in good condition alive and without unusual shrinkage, within four hours from the time of departure from Waverly, and, by reasonably prompt, diligent and careful handling the shrinkage of said hogs would not have averaged more than two pounds each; that defendant started the

train in which said hogs were shipped from Waverly at 7:30 p. m., on May 2, 1913, and failed to deliver the same at destination within a reasonable time, but unreasonably delayed the transportation and delivery of said hogs, and so negligently handled the same while in its possession that they were not delivered at destination until 9 o'clock a. m. May 3, 1913; that by reason of said negligent handling and unreasonable delay in transporting and delivering the same, the hogs were jaded, and had suffered excessive and unusual shrinkage to the amount of 700 pounds over and above the usual and ordinary shrinkage incident to such shipment; that six hogs weighing 1,780 pounds, of the value of $150, were dead and wholly lost to plaintiffs; that the fair market value of such hogs on May 3, 1913, in said city of Evansville, was $8.40 per hundred pounds; that payment of plaintiffs' claim has been unduly delayed and plaintiffs should recover interest thereon from May 3, 1913. Demand $250.

The demurrer to the complaint was for insufficiency of facts to state a cause of action. Appellant's memorandum states that: (1) The complaint does not show a violation of any duty owing the plaintiffs by the railway company; (2) that it shows no negligence on the part of the defendant; (3) that it does not show that the company had any notice or knowledge that the hogs were to be delivered at any particular time; (4) that the complaint seeks to recover special damages, but fails to aver facts authorizing the recovery of such damages.

The complaint contains the general averments of unreasonable delay in the shipment of the live stock,

and the specific averments that the reasonable
1.    time required for such shipment was four
      hours and that the time consumed in making
the delivery of the hogs was from 7:30 p. m. to 9 a. m.
of the following day, or more than thirteen hours.
. Also that by reason of the negligent handling and
unreasonable delay in transporting and delivering the
hogs, they suffered unusual and excessive shrinkage
to the amount of 700 pounds, and also that six hogs
were wholly lost to appellees, to their damage as
alleged. As against the objections suggested by ap-
pellant's memorandum, the complaint states a cause
of action at common law for damages, and the court
did not err in overruling the demurrer thereto. *Stiles*
v. *Hasler* (1914), 56 Ind. App. 88, 91, 104 N. E. 878;
*Toledo, etc., R. Co.* v. *Milner* (1916), 62 Ind. App. 208,
213-216, 110 N. E. 756, and cases cited; *Domestic
Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 601,
100 N. E. 675; *Chesapeake, etc., R. Co.* v. *Jordan*
(1916), 63 Ind. App. 365, 102 N. E. 99, 114 N. E. 461;
*Wabash R. Co.* v. *Priddy* (1913), 179 Ind. 483, 495,
497, 501, 101 N. E. 724; Acts 1915 p. 123, §343a Burns'
Supp. 1918.

The second paragraph of answer in substance avers
that in shipping the live stock as alleged in the com-
plaint, appellees entered into a special contract with
appellant, which is made a part of the answer as
exhibit A; that at the time appellant had on file with
the Interstate Commerce Commission as required by
the laws of the United States, certain printed sched-
ules showing all rates of shipments over its lines,
which schedules included the live stock of appellees
mentioned in the complaint; that under the classifica-
tion which applied to said shipment it was provided
in said contract, in substance, that the stock was

shipped at a stipulated reduced rate "subject to the conditions of the carrier's bill of lading" and that property carried otherwise will be charged ten per cent. higher rate than if shipped subject to the conditions of the carrier's bill of lading; that it was provided in the schedule so filed as aforesaid that the valuation of live stock might be limited by contract between the shipper and carrier; that by the terms of the contract entered into by appellees and appellant under which said shipment was made, it was agreed that the value of live stock so shipped should not exceed $10 for each hog, and that in no event should appellant be liable in excess of such valuation; that it was further agreed that no claim for loss or damage to stock should be valid and enforceable against appellant unless the claim therefor was made in writing, duly verified and delivered to the general freight or claim agent of the road, or to the agent of the company at the station from which the shipment was made, within ten days from the time said stock was moved from the cars; that appellees at no time made such claim in the manner aforesaid. Wherefore defendant demands judgment for costs.

The second paragraph of reply is an argumentative denial of the several averments of the special answer aforesaid.

The third paragraph of special reply to the second paragraph of answer in substance avers that the written contract mentioned in such answer was a regularly printed form of defendant, and was the only form of contract in use by it at Waverly, Kentucky, and was the only form of contract that defendant's agent at said town of Waverly was authorized by defendant to enter into with shippers of live stock from

said town; that defendant refused to accept said live stock for transportation unless plaintiffs would first sign said printed form of contract; that there was no consideration for the alleged agreement in said written contract that the value of the stock shipped thereunder should not exceed $10 for each hog and that the company should not be liable in any event in excess of such valuation; that there was no consideration for the alleged agreement that no claim for loss or damage to live stock should be valid and enforceable against the carrier unless the claim therefor was made out, verified and presented in the manner therein stipulated.

The demurrer of appellant is on the ground that the third paragraph of reply does not state facts sufficient to avoid the second paragraph of its answer. The statement with the demurrer indicates that appellant's contention is based on the proposition that the reply is insufficient because it fails to state any facts showing that there was no consideration for the stipulation limiting the value of each hog shipped to $10, and likewise that the reply fails to state facts showing that there was no consideration for the written agreement entered into by appellees and appellant.

No point is made as to the verification, time and presentation of a claim for damages.

The third paragraph of reply states facts which show that appellees were compelled to ship under the alleged written contract or not at all, and that the agent of appellant was unauthorized to ship live stock from Waverly except under the form and terms of the contract signed by appellees.

While a stipulated difference in the shipping rate

affords a sufficient consideration to support a contract for limited liability of a common carrier, where the shipper has a *bona fide* opportunity of making choice of rates and of shipping with unrestricted common-law liability, the mere recital in the contract of a difference of rates with corresponding differences in liability does not preclude the shipper from making proof of the real transaction and showing that he was not, as a matter of fact, afforded the opportunity of making such choice of rates, paying the higher rate, and shipping with unrestricted common-law liability of the carrier.

A contract limiting the common-law liability of the carrier must be supported by a valuable consideration apart from the mere acceptance of the property for shipment. A contract of shipment entered into as alleged in the third paragraph of reply is not a valid and enforceable contract. Said paragraph was therefore sufficient to withstand appellant's demurrer and the court did not err in overruling the same. *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 412, 69 N. E. 138, 63 L. R. A. 948; *Cleveland, etc., R. Co.* v. *Blind* (1914), 182 Ind. 398, 404, 105 N. E. 483, 491; *Cleveland, etc., R. Co.* v. *Hollowell* (1909), 172 Ind. 466, 470, 88 N. E. 680; *Cleveland, etc., R. Co.* v. *Hayes* (1914), 181 Ind. 87, 105, 102 N. E. 34, 103 N. E. 839; *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), 175 Ind. 196, 208, 91 N. E. 735, 93 N. E. 996; *Toledo, etc., R. Co.* v. *Milner, supra,* and cases cited.

Appellant also contends that the court erred in giving certain instructions to the jury and in refus-

ing to give certain instructions tendered by it. The controverted questions in the case arise mainly in relation to the special contract of shipment and the manner in which it was entered into by the parties.

The court, by fair and proper instructions, submitted to the jury as questions of fact to be determined from the evidence the propositions 6. whether appellees were afforded an opportunity of shipping at a higher rate with common-law liability unrestricted by the special contract, and whether the alleged contract was voluntarily entered into by appellees when they could have availed themselves of paying a higher rate and shipping their live stock without the restriction of such special contract. The court also properly instructed the jury as to the legal effect of such contract if voluntarily entered into by appellees, as above indicated, and also stated appellees' right to recover if such contract was not entered into, provided they had otherwise proved their case substantially as alleged.

We deem it unnecessary to discuss each question separately for the reason that we have in effect decided the questions appellant seeks to present in relation to the instructions.

The instructions given fairly and accurately state the law applicable to the issues and the evidence. The instructions refused, as far as correct and applicable, were duly covered by those given.

The sufficiency of the evidence to sustain the verdict is also challenged by appellant.

We have read the evidence and find it amply sufficient under the rules of appellate procedure to support the verdict, both as to appellees' right to recover

and as to the amount of the verdict. No one accompanied the shipment on behalf of appellees.

The verdict finds every issuable fact in appellees' favor, including the facts aforesaid as to the different rates of shipment, and whether appellees were afforded an opportunity of shipping their live stock other than under the particular contract and rate stipulated in said special contract.

While there is evidence tending strongly to show that the contract was not voluntarily entered into when appellees could have paid the higher rate and shipped with unrestricted common-law liability, and hence that the contract is not binding upon appellees, still if we should give effect to the contract as to the valuation of each hog shipped, the evidence as to the excessive amount of shrinkage, under the rule applicable on appeal, considered in connection with such valuation, would still sustain the verdict. *Pittsburgh, etc., R. Co.* v. *Mitchell, supra,* 209; *Wabash R. Co.* v. *Priddy, supra; Pittsburgh, etc., R. Co.* v. *Knox* (1912), 177 Ind. 344, 352, 98 N. E. 295.

We find no error prejudicial to appellant. The case seems to have been fairly tried on its merits and a correct result reached. §700 Burns 1914, §658 R. S. 1881.

Judgment affirmed.